UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TRANSCONTINENTAL GAS PIPELINE CORPORATION | CIVIL ACTION |
| VERSUS | NO. 05-1295 |
| SOCIETE d'EXPLOITATION du SOLITAIRE, S.A., ET AL | SECTION "C" (5) |

ORDER AND REASONS

Before the Court is Defendants' Motion in Limine to exclude or limit the testimony of Plaintiff's experts, Chris Alexander ("Alexander") and Sandor Karpathy ("Karpathy") (Rec. Doc. 44). Additionally, Defendants' motion requests an adverse inference regarding the extent of damage to Plaintiff's pipeline. Defendants, Societe d'Exploitation du Solitaire, S.A., Allseas USA, Inc., Allseas Marine Contractors, S.A., Gulfterra Cameron Highway Oil Pipeline Corp. ("Defendants"), assert that the expert testimony and report of Alexander and Karpathy do not comply with the Federal Rules of Evidence because: (1) Plaintiff ghost-wrote the finished reports; (2) the survey data upon which the experts rely is flawed; (3) Plaintiff has intentionally withheld underlying data contained in the reports; (4) Plaintiff has deprived Defendants of the opportunity to examine the allegedly damaged pipeline by leaving the pipe on the ocean floor. Plaintiff opposes the motion. The motion is **DENIED**.

1

**I. Background**:

In the case at bar, Plaintiff is the owner and operator of a 24-inch, high pressure, natural gas pipeline located on the Outer Continental Shelf, sixty (60) miles off the coast of Louisiana. The pipeline transports natural gas and condensate from production areas to shore. (Rec. Doc. 43). The M/V Solitaire ("Solitaire") is owned by Societe d' Exploitation du Solitaire, S.A. and was hired by Allseas USA, Inc. to install an additional pipeline off the coast of Louisiana. (Id.). During construction of the additional pipeline, the Solitaire deployed an anchor in close proximity to the Plaintiff's pipeline. (Id.). On April 9, 2004, the Solitaire attempted to recover its anchor, but its efforts were frustrated because the anchor was caught on Plaintiff's pipeline. (Id. at p. 2.). Defendants have jointly and severally admitted liability for the legally recoverable damages Plaintiff's pipeline sustained as a result of the anchor impingement. (Id.). Plaintiff offers Alexander and Karpathy as expert witnesses to testify about the extent of damage Plaintiff's pipeline sustained, and the repairs Plaintiff undertook to repair their pipeline. (Rec. Doc. 39).

**II. Expert Witness Standard**:

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702.

Rule 702 was amended in 2000 to reflect the United States Supreme Court's decision in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The <u>Daubert</u> decision changed the criteria for the admissibility of expert testimony and charged trial courts to act as "gate-keepers" to ensure that the proffered testimony is both relevant and reliable. <u>Daubert</u>, 509 U.S. at 589, 592-93, 113 S.Ct. at 2795, 2796. In <u>Kumho Tire</u>, the Supreme Court held that the relevant and reliable standard announced in <u>Daubert</u> for scientific expert testimony applied to all types of expert testimony. <u>Kumho Tire</u>, 526 U.S. at 147, 119 S.Ct. at 1171.

In <u>Daubert</u>, the Supreme Court provided a two-prong test for the trial judge to determine the admissibility of expert testimony. To admit expert testimony, a court "must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to: (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." <u>Daubert</u>, 509 U.S. at 592, 113 S.Ct. at 2796. Both prongs of the <u>Daubert</u> test must be satisfied before the proffered expert testimony may be admitted. Id. at 595, 113 S.Ct. at 2796. This analysis "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." <u>Id.</u> Thus, the first prong of <u>Daubert</u> focuses on whether the expert testimony is based on a reliable methodology. In determining an expert's reliability, the court's focus "must be solely on principles and methodology, not on the conclusions that they generate." <u>Id.</u> at 595, 113 S.Ct. at 2797. Several factors which may be considered in determining the soundness of the scientific methodology include: (1) whether the theory or technique can be

3

and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error and the existence and maintenance of standards; and (4) whether the theory or technique used has been generally accepted. Id. at 593-94, 113 S.Ct. at 2796-97. These factors do not constitute a definitive checklist or test. Kumho Tire, 526 U.S. at 144, 119 S.Ct. at 1175. Instead, they compose a nonexclusive, flexible test to ascertain the validity or reliability of the methodology the expert employed. Id. The applicability of each factor depends on the particular facts of the case. Id.

The second prong, whether the proposed testimony will assist the trier of fact to understand or determine a fact in issue, goes primarily to the issue of relevancy. Daubert, 509 U.S. at 591, 113 S.Ct. at 2795. Daubert described this examination as a question of whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. Id., citing United States v. Downing, 753 F.2d 1224, 1242 (3rd Cir.1985). As noted in Cunningham v. Bienfang, 2002 WL 31553976 (N.D.Tex. Nov. 15, 2002), Federal Rule of Evidence 401 defines "relevant evidence" as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Therefore, expert testimony is not relevant, and thus, inadmissable if it is not helpful. "Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier." Peters v. Five Star Marine, 898 F.2d 448, 450 (5th Cir .1990). "The Court in Peters ruled that it is within the discretion of the trial judge to decide "that the [fact-finder] could adeptly assess the situation using only their common experience and knowledge," and thus exclude expert testimony on that basis. If the expert's testimony brings no more to the

finder of fact than the lawyers can offer in argument, the expert's opinions should be excluded. In re Midland Enterprises, Inc., 2002 WL 31780156 at *3 (E.D.La. Dec. 11, 2002).

When expert testimony is challenged under Daubert, the burden of proof rests with the party seeking to present the testimony. Moore v. Ashland Chemical, Inc., 151 F.3d 269 (5th Cir.1998). To meet this burden, a party cannot simply rely on their expert's assurances that she has utilized generally accepted scientific methodology. Rather, some objective, independent validation of the expert's methodology is required. Id. Nonetheless, in Scordill v. Louisville Ladder Group, L.L.C., 2003 WL 22427981, at *3 (E.D.La. October 24, 2003), the Court noted that "its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system." As the court in Daubert noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. As a general rule, questions relating to the bases and sources of an expert's opinion rather than its admissibility should be left for the jury's consideration. United States v. 14.38 Acres of Land, More or Less S. in County, Miss. 80 F.3d 1074, 1077 (5th Cir.1996), citing Viterbo v. Dow Chemical Co., 826 F.2d 420, 422 (5th Cir.1987). With these parameters in mind the Court will now address the substance of the motion.

### III. Analysis:

First, as Plaintiff correctly points out, Defendants' reliance on Daubert considerations is untimely. This Court set July 25, 2007 as the pre-trial scheduling deadline for Daubert challenges. (Rec. Doc. 31, Scheduling Order.). However, Defendants' motion is also denied on

the merits.

First, Defendants aver that Plaintiff has "ghost-written" the challenged expert reports. Specifically, Defendants point to changes in the expert reports following revisions made by Butch Exley, one of Plaintiff's in-house engineers. Defendants rely on <u>Long Term Capital Holdings v. United States</u>, 2003 WL 21269586, at *4 (D. Conn.) to argue that if the opinions in the expert reports are not actually the opinions of the experts, then the report fails to satisfy the requirements of Fed. R. Evid. 702 because the report must be based on the expert's own valid reasoning and methodology to be admissible. In <u>Long Term Capital Holdings</u>, one party accused the other of "ghost-writing" expert reports. The <u>Long Term Capital Holdings</u> court quoted <u>Trigon Ins. Co. v. United States</u>, 204 F.R.D. 277, 291 (E.D. Va. 2001) to define ghost-writing as "the preparation of the substan[tive] writing of the report by someone other than the expert purporting to have written it." <u>Long Term Capital Holdings</u>, at *4. Defendants have shown that parts of the expert reports were edited by Plaintiff's in-house engineer, Mr. Exley. (Rec. Doc. 44). And, as the court in <u>Trigon</u> stated: "[u]nquestionably, Rule 26 requires an expert witness to prepare his own Rule 26 Report." <u>Trigon Ins. Co.</u>, 204 F.R.D. at 291. Yet, the Advisory Committee Notes accompanying Rule 26 contemplate "assistance" given to experts in preparing their reports. Specifically, the Advisory Committee Notes provide:

> Rule 26(a)(2)(B) does not preclude counsel from providing assistance to experts in preparing the reports, and indeed, with experts such as automobile mechanics, this assistance may be needed. Nevertheless, the report, which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the testimony to be given by the witness and it must be signed by the witness. Rule 26, Advisory Committee Notes.

Indeed, <u>Trigon</u>, court stated that supervision and assistance in the preparation of an expert report is permitted. <u>Trigon Ins. Co.</u>, 204 F.R.D. at 292 (citing <u>Marek v. Moore</u>, 171 F.R.D. 298

(D.Kan.1997)). The Trigon court adopted two requirements from Marek v. Moore: (1) the report should be written in a manner that reflects the testimony to be given by the expert witness; and (2) the report must be signed by the expert. Id. Furthermore, the Trigon court held that the "burden of proving ghost-writing rests with [the party seeking exclusion]. To prove ghost-writing, [the party seeking exclusion] must use the available documents to show that [the non-moving party] provided the substance of the opinions of the testifying experts, not just editorial assistance." Trigon Ins. Co., 204 F.R.D. at 295. In this case, the report prepared by Alexander and Karpathy contains a finite element analysis of the bending strain in the displaced pipeline conducted by Alexander and Karpathy; and, the report is signed by both Mr. Alexander and Mr. Karpathy. (Rec. Doc. 62, Exhibit 10).Therefore, Defendants have fallen short of showing that the substantive writing of the reports was by someone other than Alexander and Karpathy. Indeed, Defendants argument regarding "ghost-writing" goes more to the weight of the evidence, rather than its admissibility. Accordingly, Defendants' motion is denied on this ground.

Defendants next argue that the inherent error rate of the finite element analysis conducted by Alexander and Karpathy violate Rule 702's requirement that expert testimony be based on "sufficient facts or data." Additionally, Defendants' challenge the admissibility of the expert testimony based on the Supreme Court's statement in Daubert that "the known or potential rate of error" of the expert's methodology bears on a court's decision whether or not it should allow the expert to testify because of problems with the data's reliability. (Rec. Doc. 44). Specifically, Defendants rely on the Fifth Circuit's ruling in Moore v. Ashland Chem., Inc., 151 F.3d 269, 278 (5th Cir. 1998) (en banc) to argue that an expert's opinion is inadmissible when there is no accurate information upon which the opinion is based. (Id. at p. 18). In Moore, the expert's

7

opinion was inadmissible because: "None of Daubert's factors to assess whether the opinion was based on sound scientific principles was met. [The expert's] theory had not been tested; the theory had not been subjected to peer review or publication; the potential rate of error had not been determined or applied; and the theory had not been generally accepted in the scientific community. In sum, [the expert] could cite no scientific support for his conclusion." Moore, 151 F.3d at 279. In this case, Defendants are attacking the reliability of the underlying data supporting the expert's analysis. Again, the Advisory Committee Note to Rule 702 is instructive, it states:

> When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other. Rule 702, Advisory Committee Notes.

Additionally, in Hose v. Chicago Northwestern Transp. Co, 70 F.3d 968 , 974 (8th Cir. 1996), the court held, "the factual basis of an expert opinion goes to the credibility of the testimony not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." Hose, 70 F.3d at 974 (quoting Loudermill v. Dow Chem. Co., 863 F.2d 566, 570 (8th Cir.1988)). Thus, Defendants' attack on the data used by Alexander and Karpathy is not a ground for exclusion. Furthermore, the methodology employed by Alexander and Karpathy to reach their expert opinion is called "finite element analysis." The finite element analysis methodology is reliable in the Daubert sense of the word because inputting the same data into the analysis would reliably result in the same output. Defendant has failed to show that the expert opinions are so fundamentally unsupported that they can offer no assistance to the fact-finder. Therefore, Defendants argument regarding data inaccuracies goes more to the weight of the

evidence, rather than its admissibility. Accordingly, Defendants' motion is denied on this ground.

Next, Defendants argue that data was kept secret by Plaintiffs. Specifically, Defendants aver that the "C & C data discussed above was, in fact, gathered secretly, despite the contemporaneous objections of [Defendants]." (Rec. Doc. 44). Defendants rely on Snare Corp. v. Moran, 1961 AMC 2605, 2610 (S.D.N.Y. 1961) for the proposition that "secret inspections for the purpose of obtaining evidence for litigation have been frowned upon by courts of Admiralty and they are accorded diminished weight."  (Rec. Doc. 44). Thus, Defendants' argument pertains to the credibility of the contested evidence, but fails to address the admissibility of evidence. Furthermore, Plaintiff contests the "secrecy" of any data, claiming that the "C & C" data was disclosed to Defendants in 2004. (Rec. Doc. 62). Defendants' motion is denied on the ground of secrecy.

Finally, Defendants argue spoliation of evidence. Specifically, Defendants aver that they have been denied the opportunity to examine the damaged pipeline because Plaintiffs have failed to produce even "one inch" of the pipe. (Rec. Doc. 44). "The theory of spoliation of evidence refers to an intentional destruction of evidence for purpose of depriving opposing parties of its use." Burge v. St. Tammany Parish Sheriff's Office, 2000 WL 815879, at *3 (E.D. La. 2000) (internal quotations omitted). Only upon a showing of "bad faith" or "bad conduct" does the Fifth Circuit permit an adverse inference against the destroyer of evidence. Condrey v. SunTrust Bank of Georgia, 431 F.3d 191, 203 (5th Cir. 2005). In this case, Defendants do not argue that Plaintiff destroyed the pipeline, Defendants merely claim that Plaintiff left the pipeline on the ocean floor. Therefore, Defendants have not met their burden regarding spoliation. Accordingly,

Defendants motion is denied on this ground.

### IV. Conclusion:

**IT IS ORDERED** that Defendants' Motion in Limine to exclude or limit the expert testimony of Alexander and Karpathy is **DENIED** (Rec. Doc. 44).

New Orleans, Louisiana, this 11th day of September, 2007.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE